s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s

IN THE UNITED STATES DISTCT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s

| | | |
|---|---|---|
| WINDERMERE REAL ESTATE SERVICES COMPANY, d/b/a WINDERMERE SERVICES COMPANY 1151 Fairview Ave. N Suite 105 Seattle, WA 98109, | : : : : | Case No.  (Hon. _____)  **VERIFIED COMPLAINT AND REQUEST FOR INJUNCTIVE RELIEF** |
| Plaintiff, v.  DELTA MEDIA GROUP, INC. c/o Michael Minard 7015 Sunset Strip Ave. NW North Canton, OH 44720  Defendant. | : : : : : : : : : : | Karl H. Schneider (0012881) EASTMAN & SMITH LTD. 250 Civic Center Drive, Suite 280 Columbus, Ohio 43215 Telephone: (614) 564-1445 Fax: (614) 280-1777 Email: khschneider@eastmansmith.com  Jared J. Lefevre (0085931) Claire M. Griffin (0103662) EASTMAN & SMITH LTD. One SeaGate, 27th Floor P. O. Box 10032 Toledo, Ohio 43699-0032 Telephone: (419) 241-6000 Fax: (419) 247-1777 E-mail: jjlefevre@eastmansmith.com       cmgriffin@eastmansmith.com  Attorneys for Plaintiff Windermere Real Estate Services Company, d//b/a Windermere Services Company |

s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s

1

Plaintiff Windermere Real Estate Services Company, d/b/a Windermere Services Company ("**Windermere**") for its Verified Complaint and Request for Injunctive Relief against Defendant Delta Media Group, Inc. ("**Delta**") states as follows:

### THE PARTIES, JURISDICTION, AND VENUE

1. Windermere is a Washington corporation with a principal place of business in Seattle, Washington and a franchisor which licenses the Windermere brand to independently owned and operated real estate brokerages in the Western United States.

2. Delta is an Ohio corporation with a principal place of business in North Canton, Ohio.

3. This is an action for injunctive relief from actions occurring in the Northern District of Ohio.

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000 and there is complete diversity of citizenship. This Court also has subject matter jurisdiction under 18 U.S.C. § 1836 and 28 U.S.C. § 1367.

5. Venue is appropriate pursuant to 28 U.S.C. § 1391(b) because Delta is domiciled in this district and the events giving rise to the claims occurred in this district. Further, under Section 13 of the parties' agreement, as referenced in paragraph 10 herein, this Court is the proper venue for any action to seek injunctive relief regarding a party's intellectual property.

### FACTS COMMON TO ALL CAUSES OF ACTION

6. Windermere incorporates the allegations in paragraphs 1 through 5 above, as if fully restated herein.

7. Windermere is a real estate franchising company with franchisees that engage more than 6,000 agents and have 300 offices across nine states.

8. Windermere provides franchises to real estate brokerages and licenses the use of its brand to the franchisees.

9. Delta is a software company that develops real estate technology platforms for its clients, including real estate brokers and agents.

10. On or about May 31, 2024, Windermere and Delta entered into a service agreement ("**Agreement**") for Delta to provide Windermere's website development, including the public-facing company, office, and agent pages, and to host Windermere's internal intranet, which is accessible to Windermere's franchisees and agents. A true and accurate copy of the Agreement is attached hereto as *Exhibit A.*

11. The Agreement provides that Delta would be the sole provider of Windermere's website and intranet, also called "DeltaNET."

12. Windermere is required to pay all invoices issued by Delta within 30 days and has paid all invoices that have come due to date.

13. Windermere provided Delta with its intellectual property, including, without limitation, trademarks, software source code, proprietary business materials, processes, policies, procedures, and "know-how" so Delta could build Windermere's website and be the host of its intranet.

14. On or about June 21, 2024, Windermere provided Delta with a WordPress export of its sample website from its prior vendor, Moxiworks.

15. In July 2024, Delta requested, for the first time, an export of Moxiworks' proprietary elements used in the WordPress data, including code, templates, and widgets that Moxiworks created (the "**Proprietary Code**"), and which Moxiworks refused to provide. When Windermere conveyed that it could not provide a copy of the Proprietary Code, Delta

acknowledged it would not provide such information to a competitor either and agreed to move ahead with its website development services without the Proprietary Code. At this time, Windermere made clear, and Delta understood, that Proprietary Code would never be provided. In August 2024, Delta told Windermere that rather than using WordPress, it would import what Windermere had already provided into their own system and invest in authoring tools that would be at parity with what WordPress provided through Moxiworks.

16. In August 2024, Delta also began development of an intranet website ("**Launch Pad**") for Windermere. Windermere employees designed and hand-coded certain pages for Launch Pad directly into the Delta system. Delta began including CloudDelta File Management services on Windermere's invoices in August 2024. Windermere has paid all invoices that have come due.

17. By October 2024, Windermere migrated its entire intranet-based document repository, including but not limited to sample contracts and forms, continuing education materials, marketing promotion, and brand policies and guidelines, many of which contain Windermere's marks, to Launch Pad. Launch Pad was made available in Beta form on or about October 2, 2024.

18. On or about November 13, 2024, Launch Pad became Windermere's primary intranet service.

19. On or about December 10, 2024, Launch Pad became Windermere's sole intranet platform. Launch Pad was live from that date, with Delta's full knowledge, cooperation, and verification, and Windermere deprecated its previous platform through Moxiworks. Delta had already begun servicing support tickets from Windermere's franchisees by that date.

20. Delta was obligated to also "go live" with Windermere's public-facing website (the "**Windermere Site**") on January 8, 2025 (the "**Site Launch Date**").

21. In the months leading up to the Site Launch Date, Delta pushed back deadlines, including the deadline to demonstrate the Windermere Site pages, authoring tools, and widgets to Windermere.

22. In the last week of December 2024, Delta began to suggest it would be unable to complete the Windermere Site development and launch.

23. On or about January 2, 2025, Delta abruptly informed Windermere via email that it would not meet the promised deadline of January 8, 2025, for all website services but noted that certain portions of the Windermere Site were essentially complete and ready for launch. Delta asserted it could not complete the remaining portions without the Proprietary Code, which it had known was unavailable at least as early as July 2024. Delta asserted Windermere would either need to provide the Proprietary Code or pay Delta an additional undisclosed amount to complete the remainder of the project.

24. On or about January 3, 2025, Windermere met with Delta in a virtual meeting so Delta could walk Windermere through the current version of the main Windermere Site webpages and authoring systems. Delta again suggested these pages and services were nearly ready for release. As the demonstration progressed, Windermere discovered numerous failings and asked questions about features that were not functioning properly. Windermere expressed frustration at Delta's failure to meet deadlines and provide the contracted-for services and products, and Delta suggested Windermere should probably remain with Moxiworks for its public-facing website. Delta requested a response to its January 2, 2025, email, but Windermere indicated it would need

to discuss internally. The meeting ended with nothing decided and no conversation about Launch Pad.

25. Around 9:00am PST on January 6, 2025, the very next business day, without discussion or notice, Delta removed Windermere's access to Launch Pad. Windermere discovered this when employees could not login; rather, the site displayed a Delta login box, for which Windermere credentials were ineffective. When employees attempted to contact Delta support, another service required under the Agreement, they found support had been shut off.

26. Windermere reached out to Delta to notify it of the outages and was informed that Delta intentionally shut off access and would not restore access until Windermere followed up on the January 3, 2025, meeting, in which Delta had demanded a response to its January 2, 2025, email. In other words, Delta insisted that Windermere agree to either (1) obtain proprietary materials of a competitor that refused to provide them months earlier, or (2) pay them an undisclosed additional amount to build a new website from scratch, with no definitive date for release.

27. Windermere reiterated to Delta in writing the irreparable harm Delta was causing to it, its franchisees, and their consumers by intentionally removing access to a product it knew was essential, live, and in-use and for which Windermere had no back-up. Windermere asked that Delta restore access while the parties worked in good faith toward a resolution, as any cost of its services could be reimbursed monetarily, whereas the harm to Windermere was ongoing and could not be undone. Delta refused and would not restore access to this vital feature unless Windermere agreed to its demands, despite its failure to provide any indication of what the ultimate cost would be to Windermere.

28. Windermere's access to the intranet is crucial to the everyday operation of its business operations, as well as those of its franchisees, and the lack of access is presently materially interfering with its franchisees' daily operations and their agents' ability to market, sell, and close on real property sales.

29. As a result, Windermere is sustaining ongoing immediate, irreparable injury, including, without limitation, loss of goodwill, reputational damage, and other ongoing damages which are difficult to calculate.

30. Furthermore, by agreeing that actions for injunctive relief regarding trademarks and intellectual property could be filed in this Court, the parties recognized and agreed there was no adequate remedy at law for loss of access or use of such information.

## COUNT ONE
### (Breach of Contract)

31. Windermere incorporates the allegations in paragraphs 1 through 30 above, as if fully restated herein.

32. Delta contracted with Windermere to be the exclusive provider of Windermere's intranet.

33. Windermere has exclusively used Delta-hosted Launch Pad since on or about December 10, 2024.

34. Delta removed Windermere's access to the Launch Pad on January 6, 2025, in bad faith and material breach of its Agreement to provide access and knowing that Windermere relied upon such access.

35. Delta has refused to restore Windermere's access to Launch Pad.

36. Windermere is and will continue to sustain immediate, irreparable injury for which there is no adequate remedy at law if Delta's continued breach of the contract is not enjoined.

37. Accordingly, Windermere is entitled to a temporary restraining order and preliminary and permanent injunctive relief requiring Delta to restore access to the intranet, return Windermere's trademarks, intellectual property (including code), confidential information, and trade secrets, and to maintain and preserve all other information provided by Windermere pending further order of the Court.

38. Subject to Section 13 of the Agreement, Windermere reserves the right to assert a claim for damages for breach of contract in JAMS arbitration, or it to amend this pleading if Delta waives the arbitration clause.

## COUNT TWO
### (Misappropriation of Trade Secrets)

39. Windermere incorporates the allegations in paragraphs 1 through 38 above, as if fully restated herein.

40. Windermere's html source code, proprietary business materials, processes, policies, procedures, and "know-how" (the "**Trade Secrets**") are confidential trade secret information that derive independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use.

41. Windermere's Trade Secrets are subject to efforts that are reasonable under the circumstances to maintain their secrecy, specifically including confidentiality policies and non-disclosure agreements with key employees.

7749144.1

42. Delta obtained access to Windermere's Trade Secrets by virtue of the Agreement, in which it recognized the confidentiality of the information and its duty to maintain the same and to allow Windermere access and use of the information.

43. Delta's continued access to the Trade Secrets after its material breach of the Agreement is improper and unauthorized.

44. Delta holds and is preventing access to the Trade Secrets without justification and to intentionally interfere with Windermere's business operations.

45. Accordingly, Windermere is entitled to a temporary restraining order and preliminary and permanent injunctive relief requiring Delta to restore access to the intranet, return Windermere's trademarks, intellectual property, confidential information, and trade secrets, and to maintain and preserve all other information provided by Windermere pending further order of the Court.

46. Subject to Section 13 of the Agreement, Windermere reserves the right to assert a claim for damages for misappropriation in JAMS arbitration, or it to amend this pleading if Delta waives the arbitration clause.

WHEREFORE, Plaintiff Windermere Real Estate Services Company d/b/a Windermere Services Company requests the Court enter judgment in its favor and against Defendant Delta Media Group, Inc. as follows:

    a. Enter a temporary restraining order and preliminary and permanent injunctive relief ordering that:

        i. Delta shall immediately restore Windermere's access to the intranet;

        ii. Delta shall immediately deliver to Windermere all trademarks and intellectual property in its possession that is owned by Windermere;

    iii.    Delta shall immediately deliver to Windermere all confidential and trade secret works in its possession; and

    iv.    Delta shall preserve and not delete or destroy all notes and other records, and copies of all written, email, text message, and other communications with any person or entity relating to Windermere's business, or any person employed by them or affiliated with them, which has been sent by or to Defendants;

b.    Such other and further relief as this court deems just and equitable.

Respectfully submitted,

EASTMAN & SMITH LTD.

*/s/ Claire M. Griffin*
Karl H. Schneider (0012881)
EASTMAN & SMITH LTD.
250 Civic Center Drive, Suite 280
Columbus, Ohio 43215
Telephone: (614) 564-1445
Fax: (614) 280-1777
Email: khschneider@eastmansmith.com

Jared J. Lefevre (0085931)
Claire M. Griffin (0103662)
EASTMAN & SMITH LTD.
One SeaGate, 27th Floor
P. O. Box 10032
Toledo, Ohio 43699-0032
Telephone: (419) 241-6000
Fax: (419) 247-1777
E-mail: jjlefevre@eastmansmith.com
       cmgrifin@eastmansmith.com

Attorneys for Plaintiff Windermere Real Estate Services Company d/b/a Windermere Services Company

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

                                                  Respectfully submitted,

                                                  EASTMAN & SMITH LTD.

*/s/ Claire M. Griffin*
Karl H. Schneider (0012881)
EASTMAN & SMITH LTD.
250 Civic Center Drive, Suite 280
Columbus, Ohio 43215
Telephone:  (614) 564-1445
Fax:  (614) 280-1777
Email: khschneider@eastmansmith.com

Jared J. Lefevre (0085931)
Claire M. Griffin (0103662)
EASTMAN & SMITH LTD.
One SeaGate, 27th Floor
P. O. Box 10032
Toledo, Ohio 43699-0032
Telephone:  (419) 241-6000
Fax:  (419) 247-1777
E-mail: jjlefevre@eastmansmith.com
        cmgrifin@eastmansmith.com

Attorneys for Plaintiff Windermere Real Estate Services Company d/b/a Windermere Services Company

11

## **VERIFICATION**

STATE OF  OHIO        )
                      ) SS:
COUNTY OF  LUCAS      )

I, Brooks Burton, Chief Operating Officer of Windermere Real Estate Services Company, d/b/a Windermere Services Company, being of sound mind and lawful age, hereby depose and state that I have read the foregoing Verified Complaint, and that the averments set forth therein are true to the best of my knowledge and belief.

*Brooks Burton*
_____
Windermere Real Estate Services Company,
d/b/a Windermere Services Company
By: Brooks Burton
Its: Chief Operating Officer

Sworn to before me and subscribed in my presence this  1/13/2025  day of January 2025.



*Ashley E. Lindsley*
_____
Notary Public

10018342
02/26/2025

7749144.1